UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA RAGUDO,[1] | Case No.: 18cv1172-GPC-MDD |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION ON MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT [ECF NOS. 12, 14]** |
| ANDREW M. SAUL, Commissioner of Social Security,[2] | |
| Defendant. | |

Plaintiff Veronica Ragudo ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner")

---

[1] Plaintiff's last name of Ragudo was misspelled on the Complaint as Ragodo. (ECF No.1). Defendant noted the error in the Answer. (ECF No. 9). Several later filed pleadings have the incorrect spelling but the Court has made the correction in this report and recommendation.

[2] Andrew M. Saul became Commissioner of Social Security on June 17, 2019 and is therefore substituted for Nancy A. Berryhill as the Defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d),

1

denying Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act ("Act"). (AR ).[3]

For the reasons expressed herein, the Court recommends the case be **REMANDED** to the ALJ for further analysis consistent with this Order. *See* 42 U.S.C. § 405(g).

## I. BACKGROUND

Plaintiff was born on December 31, 1961. (AR 200). At the time the instant application was filed on May 7, 2014, Plaintiff was 51 years-old which categorized her as a person closely approaching advanced age. 20 C.F.R. §§ 404.1563, 416.963.

### A. Procedural History

On May 7, 2014, Plaintiff protectively filed an application for a period of disability insurance benefits under Title II of the Social Security Act, alleging a disability beginning May 15, 2013. (AR 10). After her application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (*Id.*). An administrative hearing was held on April 5, 2017. Plaintiff appeared and was represented by attorney Dennis Devermont. Testimony was taken from Plaintiff and Mark Remus a vocational expert ("VE"). (*Id.*). On August 11, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits. (AR 20).

On August 18, 2017, Plaintiff sought review with the Appeals Council. (AR 149). On April 9, 2018, the Appeals Council denied Plaintiff's request for review and declared the Administrative Law Judge's decision to be the final decision of the Commissioner of Social Security in Plaintiff's case. (AR 1).

---

[3] "AR" refers to the Certified Administrative Record filed on September 7, 2018. (ECF No. 10).

This timely civil action followed.

## II. **DISCUSSION**

### A. **Legal Standard**

Sections 405(g) and 1383(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  *Id.*; *see also Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1993 (9th Cir. 2004).

Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)).  The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions.  *Desrosiers v. Sec'y of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision.  *Batson*, 359 F.3d at 1193.  When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary."  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Even if a reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  *Batson*, 359 F.3d at 1193.  Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the

matter to the Social Security Administration for further proceedings.  *Id.*

## B.  Summary of the ALJ's Findings

In rendering his decision, the ALJ followed the Commissioner's five step sequential evaluation process.  *See* C.F.R. § 404.1520.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 15, 2013. (AR 12).

At step two, the ALJ found that Plaintiff had the following severe impairment: degenerative disc disease. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. (AR 50). (citing 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

Next, after considering the entire record, the ALJ determined that Plaintiff had the "residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b)." (AR 14).  The Plaintiff could "sit six hours in an eight hour day; occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds; occasionally climb stairs, never climb ladders, scaffolds, ropes: occasionally balance, stoop, kneel, crouch, and crawl. Claimant must avoid concentrated exposure to unprotected height and dangerous or fast moving machinery." (*Id.*).  The ALJ said that this RFC assessment was "consistent with the objective medical evidence and other evidence…." (*Id.*).  The ALJ also stated that he considered the opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527. (*Id.*).

The ALJ then proceeded to step four of the sequential evaluation process.  He found Plaintiff was unable to perform her past relevant work. (AR 18).  The ALJ also found "[t]ransferability of job skills is not material to

4

the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is 'not disabled,' whether or not the [plaintiff] has transferable job skills. (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." (AR 19). For the purposes of his step five determination, the ALJ accepted the testimony of the VE . The VE determined that Plaintiff could perform jobs identified by the VE that exist in significant numbers in the national economy. For example, vacuum dryer tender (DOT Code 553.685-016); pressure tank operator (DOT code 523.385-010); fermenter operator (DOT code 559-685-070). (AR 20).

### C. Issues in Dispute

The issues in dispute in this case are: 1) whether the ALJ erred by giving great weight to the opinion of the consultative examiner, Dr. Sabourin, M.D.; and 2) whether the ALJ failed to provide clear and convincing reasons to reject the subjective limitations of Plaintiff. (AR 4, 12).

### 1. Weight given to consultative physician's report

Plaintiff contends that "[t]he ALJ erred in giving great weight to the opinion of the consultative examiner (CE) that did not review any records." (ECF 12 at 4). Specifically, Plaintiff argues that the "CE's opinion is not based on a review of the case record or any medical reports." (*Id.* at 5). According to Plaintiff the CE stated that the medical records he reviewed consisted of the "medical source vender (sic) question page." (*Id.* at 5). According to Plaintiff the "medical source vendor question page" consists of one page which could not have provided the CE with enough information upon which he could form a substantive opinion "in a case that has over 1050 pages of medical records." (*Id.*).

Defendant argues that Plaintiff's claim Dr. Sabourin erred in his analysis "misconstrues the relevant regulations and case law" and "ignores

the ALJ's stated reasons for giving Dr. Sabourin's opinion great weight." (ECF 14 at 3).

"The Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant ("treating physicians"); (2) those who examine but do not treat the claimant ("examining physicians"); and (3) those who neither examine nor treat the claimant ("non-examining physicians"). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). As a general rule, more weight is given to the opinion of a treating source than to that of a nontreating physician. *Id.* (*citing Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). Likewise, the opinion of an examining physician is typically entitled to greater weight than that of a non-examining physician. *Pitzer v. Sullivan*, 980 F.2d 502, 506 (9th Cir. 1990). Whether an ALJ has properly rejected a medical opinion—the source of the opinion; contradictory opinions in the record; and supporting medical evidence are all considered. The examining physician's opinion can alone constitute substantial evidence, where it rests on that physician's own independent examination of the [Plaintiff]. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Here, the ALJ gave great weight to Dr. Sabourin, M.D., the examining orthopedic consultative examiner. On July 12, 2016, Dr. Sabourin conducted an orthopedic consultation of Plaintiff. (AR 533). Dr. Sabourin observed Plaintiff was "alert" and sits and stands with normal posture. "There is no evidence of any tilt or list, and [she] sits comfortably during the examination." (*Id.*) "[T]he Plaintiff can rise from a chair without difficulty." (*Id.*). Plaintiff walks without a limp and is able to do toe heel and walking." (AR 535). Dr. Sabourin's impression was that Plaintiff had degenerative disk disease, status post apparent multilevel fusions and laminectomy; history of spinal fluid leak, status post reparative surgery, chronic cervical strain and

sprain. (AR 537). Dr. Sabourin opined that Plaintiff had "rather significant problems with her low back, with a failed back syndrome after a series of four surgeries on the lumbar spine." (*Id.*). He also noted that Plaintiff had "some mild neck problems" which he didn't consider too serious based upon his examination. (*Id.*). Dr. Sabourin's overall impression was that she had significant limitations due to her back problems. (AR 538). He concluded:

> She could only lift or carry 20 pounds occasionally and 10 pounds frequently. She has no gross neurological deficit other than a small patch of numbness. [S]he could stand and walk up to 6 hours of an 8 hour workday with those small weights. She could sit for 6 hours of an 8 hour workday. Push and pull limitations would be equal to lift/carry limitations. She could climb, stoop, kneel, and crouch however only occasionally. She has no manipulative limitation. She is not using assistive devices to ambulate at this time. (*Id.*)

The ALJ found Dr. Sabourin's opinions consistent with the objective medical record presented. (AR 17). According to the ALJ, Dr. Sabourin's opinion was given great weight because "the opinion is supported by the consistency with the record as a whole"; "consistent with the opinions of" the State Agency consultants; and because he has an "understanding of Social Security disability programs and their evidentiary requirements." (*Id.*).

Plaintiff contends that Dr. Sabourin's opinion "is not based on a review of the case record or any medical reports." (ECF 12 at 5). The Plaintiff argues that without the case record Dr. Sabourin's opinion is a "one-day snapshot based on a limited one-time examination." *Id.* Plaintiff also points out, as noted above, that the ALJ gave the CE's opinion great weight because it was "based on a review of the medical evidence" and it is not known whether the ALJ would have the made the same finding "if he knew that he did not review any medical records." *Id.*

1    Defendant argues that "Dr. Sabourin's report contained significant
2 information regarding his independent examination of Plaintiff, all of which
3 Plaintiff ignores in her Motion but serves as the basis for his opinion." (ECF
4 14-1 at 5). Defendant also contends that Plaintiff has not presented any
5 "significant or critical treatment records" not provided to Dr. Sabourin and
6 which could have changed his opinion. (*Id.* at 7).

7    According to Defendant, the ALJ "described at length Dr. Sabourin's
8 objective findings from his physical examination of Plaintiff." (Id. at 9).
9 Further, Defendant notes that "no physician ever opined [Plaintiff] had
10 greater limitations." (*Id.*).

11    Contrary to Plaintiff's argument, the ALJ did not improperly assign
12 great weight to Dr. Sabourin's opinion. In reaching his conclusion the ALJ
13 pointed out findings from the record evidence consistent with Dr. Sabourin's
14 findings. For example, Dr. Imran Ahmed, M.D., Plaintiff's physical therapist,
15 found Plaintiff's rehabilitation potential to be "good" and she "remained
16 independent in activities of daily living and ambulation. (AR 657). The ALJ
17 also cited to similar findings in Dr. Sabourin's report and other record
18 evidence.[4] Both reports note that Plaintiff's main complaint is chronic low
19 back pain radiating into her left leg. (AR 533, 570). Additionally, both reports
20 acknowledge Plaintiff also showed consistency in her posture and normal
21 gait. (AR 535, 570). This record evidence demonstrates that Dr. Sabourin's
22 opinion was based on his independent clinical findings and consistent with
23 the objective record presented. Thus, Dr. Sabourin's opinion may serve as
24 substantial evidence. *See Lester*, 81 F.3d 832.

25

26

27 [4] The ALJ mistakenly credited Dr. Miller with the medical records in his citation at AR 569, however, those records were created by Andrew Saurin, PA.

For these reasons, it is recommended that Plaintiff's allegation that the ALJ erred in assigning great weight to Dr. Sabourin's opinion be denied. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("[T]o the extent that [the non-treating physician's] opinion rests on objective clinical tests, it must be viewed as substantial evidence that [Plaintiff] is no longer disabled.")

## 2. Adverse Credibility Determination

As reflected in Plaintiff's motion for summary judgment, the second disputed issue raised by Plaintiff is whether the ALJ failed to articulate clear and convincing reasons for rejecting Plaintiff's pain and limitation testimony.

In *Lingenfelter v. Astrue*, 504 F.3d 1028, (9th Cir. 2007), the Court of Appeals summarized the ALJ's task with respect to assessing credibility in the context of social security appeals:

> To determine whether a [Plaintiff's] testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the Plaintiff has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The Plaintiff, however, need not show that her impairment could reasonably be expected to cause the severity of symptoms she has alleged; she need only show that it could reasonably have caused some degree of symptom. Thus, the ALJ may not reject subjective symptom testimony simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the Plaintiff meets this first test, and there is no evidence of malingering, the ALJ can reject the Plaintiff's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so....

*Lingentfelter*, 504 F.3d at 1035-36 (internal citations omitted).

In weighing a Plaintiff's credibility an ALJ may consider, among other things, the Plaintiff's "reputation for truthfulness, inconsistencies either in

the Plaintiff's testimony or between her testimony and her conduct, Plaintiff's daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms alleged by Plaintiff." *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). The court may not second guess an ALJ's credibility finding if it is supported by substantial evidence in the record. *Id.*

### a. Objective medical evidence

Once a Plaintiff "produces objective medical evidence of an underlying impairment, an ALJ may not reject a Plaintiff's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676,680 (9th Cir. 1991) (internal citations omitted). "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Id.*

Here, the ALJ opined that the Plaintiff's statements concerning the intensity, persistence and limiting effect of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence…." (AR 14). The ALJ then cited to Plaintiff's "longitudinal" medical record which included the following:

2003: Plaintiff underwent a laminectomy at L5 through S1 and has severe degenerative disk (sic) in that area. (AR 288).

2013: May 20, 2013, Plaintiff had revision laminectomies and medial forminotomies, L4-5 and L5-S1, left greater than right. Excision of left L4-5 synovial cyst. Excision of forminal disc herniation left L4-5. Placement of Mazur robotically-assisted pedicle screws, bilateral L4-5 and L5-S1. Posterolateral fusion with bone morphogentic protein (BMP) allograft and local autograft, L4-5 and L5-SI. Transforminal inner body fusion left L4-5

and L5-S1, with PEEK cages and demineralized bone matrix (DBM). (AR 374).

2014: November 17, 2014, Plaintiff had an anterior retroperitoneal discectomy and fusion via left lateral approach (XKL) and revision laminectomies and forminotomies in the left L4-5 and left L5-S1, right L4-5. (AR 15, 415-417). December 4, 2014, Plaintiff underwent surgery for a repair of a dural tear of the lumbar spine. There were no reported complications. (AR 15, 412). The ALJ stated that a review of the "[p]ost-surgical follow up notes showed minimal objective findings in contrast to [Plaintiff's] subjective complaints." (AR 15).

2015: The ALJ noted that in April—June 2015, Plaintiff was walking around the neighborhood and rated her pain at 5/10. (AR 16). The ALJ cited to other findings from that time period including no gait instability, a negative 14-point review of systems in June 2015 vs. the same review in April 2015. (AR 16, 398).

2016: The ALJ cited to pain management treatment beginning in February 2016. As a result of showing reduced range of motion in the lumbar spine with tenderness to palpitation and a positive straight leg (left) raise test, she received trigger point injections. As the ALJ noted "by the following month she reported pain relief with her medication regimen and that aqua therapy was going well." (AR 16, 589). In December 2016, the ALJ cited to a follow up examination showing "mild findings." Plaintiff was responding well to physical therapy and injections "and denied any new extremity numbness or weakness." (AR 16). The ALJ also noted Plaintiff's report showed her "toe standing and squatting was intact." (AR 16, 570). Additionally, Dr. Miller (a treating physician) found she was not in acute distress and that her physical therapy was going well." (*Id.*). Dr. Miller also noted her post-laminectomy

syndrome was stable. (*Id.*).

On this record, the ALJ reasonably concluded that the objective record evidence did not support the severity of Plaintiff's alleged impairments. This constituted a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. *See, e.g., Molina v. Astrue*, 674 F.3d 1104 at 1113 (9th Cir. 2012) (ALJ properly rejected claimant's testimony in part because it was inconsistent with medical evidence in the record).

### b. Activities of Daily Living

The other stated reason on which the ALJ based his adverse credibility determination was that Plaintiff did not show a "consistent restriction of her activities of daily living which corresponds to the alleged severity of her impairments." (AR 18). According to the Ninth Circuit there are two grounds for using daily activities to form a basis of an adverse credibility determination. Evidence of the daily activities either (1) contradicts the Plaintiff's other testimony, or (2) meets the threshold for transferable work skills. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ appears to rely on the ground that Plaintiff's daily activities contradict the Plaintiff's other testimony. For example, the ALJ noted that Plaintiff testified she used a cane but no doctor has prescribed a cane for ambulation. (AR 18). The ALJ also pointed out that her medical records showed she walked without an assistive device (AR 363, 400). The ALJ cited to Plaintiff's testimony that she tries to do household chores, including dishes and some cooking. She also does some grocery shopping with her husband. (*Id.*). The ALJ also cited to record evidence that she is able to go out independently and can drive a car. (*Id.*, 534). After a short recitation of these facts, the ALJ concluded "[d]espite the [Plaintiff's] allegations that

she is heavily limited in her daily activities, the medical evidence shows that she is physically able to do a number of Activities of Daily Living." (AR 18).

It is well settled that:

[w]hile a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

*Molina*, 674 F.3d at 1112-13 (citations and internal quotation marks omitted).

A review of the ALJ's statements regarding Plaintiff's activities of daily living demonstrates significant testimony was omitted from the ALJ's findings, regarding Plaintiff's physical abilities. For example, Plaintiff testified that her son and his wife live with them because her daughter-in-law helps around the house. (AR 58). Plaintiff also stated that she can do "a little bit of the dishes, but when it's a lot, I can't do it because when I'm standing over the sink, it hurts my back so I have to stop." (*Id.*). Plaintiff further testified she does no laundry and her husband has been doing most of the cooking. (*Id.*). She testified that she "can't bend down" to get her shoes and socks on and she uses a grabber to pick things up off the floor (AR 60, 58). In addition, she testified that her husband helps her with showering the lower part of her body because of the bending required. (AR 61). Plaintiff also testified that she does have a license to drive but the only time she does so is when her husband cannot drive her to her medical appointments. She further noted that if she has to drive she cannot take her medication. In response to the ALJ's question about how she got to her hearing, she testified

that her husband drove her. (AR 67).

Defendant cites to the ALJ's reference to Plaintiff's use of a non-prescribed cane for ambulation as further evidence that her daily activities support the ALJ's adverse credibility finding. Defendant argues that the ALJ "noted that Plaintiff's testimony regarding the necessity of a cane was inconsistent with statements from physicians that she did not use or need a cane." (ECF 14-1 at 15). A review of the record transcript shows Plaintiff acknowledged her cane was never prescribed "but it just helps." (AR 57). She testified she can walk for short periods without it, but after her surgery she fell because she can't lift her legs high and she fell over a little step in her house, so she uses a case for ambulation on as needed basis. (*Id.*). Plaintiff's fall which occurred on November 17, 2013, was documented by her treating physician in November 19, 2013. (AR 365).

Notably the ALJ recognized Plaintiff's problems with stairs because he stated "the Plaintiff testified at the hearing that she had difficulty with stairs. As such the undersigned has taken into consideration and incorporates occasional climbing of stairs." Based on this record evidence, it would be error to support his adverse credibility determination based in part on Plaintiff's cane use.

The Court finds that the ALJ's reliance on the specified daily activities did not constitute a clear and convincing reason upon which the ALJ could properly rely in support of his adverse credibility determination. Plaintiff's testimony combined with the relevant record evidence contradicts the ALJ's opinion that "she is physically able to do a number of Activities of Daily Living." (AR 18). "The Social Security Act does not require claimants to be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be

14

impossible to rest periodically or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1996) (internal citations omitted). Evidence that Plaintiff did some chores that did not take up a substantial part of the day did not detract from her credibility. *See Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001). Based on the record in this case, the ALJ's reliance on the specified daily activities was legally insufficient by itself.

The ALJ based his adverse credibility determination on two grounds: 1) Plaintiff's allegations of pain and impairment were inconsistent with the medical evidence; and 2) Plaintiff's specified activities of daily living rendered her allegations of disabling symptoms and limitations not fully consistent with the record. (AR 14-18).

Since the Court finds that that ALJ's reliance on specified "Activities of Daily Living" was legally insufficient, his sole remaining reason premised on a lack medical support is legally insufficient to support an adverse credibility determination. "[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain." *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("it is the very nature of excess pain to be out of proportion to the medical evidence.").

Under these circumstances, the Court is unable to affirm the ALJ's adverse credibility determination.

## III. CONCLUSION

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. *See, e.g., Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599,603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Remand for further proceedings is

warranted where additional administrative proceedings could remedy defects in the decision. *See, e.g.*, *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

The Court is mindful of Ninth Circuit authority for the proposition that, where an ALJ failed to properly consider either subjective symptom testimony or medical opinion evidence, it is sometimes appropriate to credit the evidence as true and remand the case for calculation and award of benefits. *See, e.g., Garrison v. Colvin*, 759 F.3d 995, 1019-21 (9th Cir. 2014). However, as noted previously, the Court has found here that the ALJ did partially support his adverse credibility determination based on lack of support in the objective medical evidence.  Accordingly, the Court agrees with Plaintiff that this is an appropriate case to remand "for the correction of the legal errors." (ECF 12 at 15).

For the foregoing reasons, this Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED** in part, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g), "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

with or without remanding the cause for a rehearing."

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the court and served on all parties no later than **September 2, 2019**. The document should be captioned "Objections to Report and Recommendations."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 9, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:   August 19, 2019

_Mitchell D. Dembin_
Hon. Mitchell D. Dembin
United States Magistrate Judge

18cv1172-GPC-MDD