UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

VERONICA RAGUDO,

　　　　　　　　　　　　Plaintiff,

v.

ANDREW M. SAUL, Commissioner of
Social Security Administration,

　　　　　　　　　　　　Defendant.

Case No.: 18-cv-1172-GPC-MDD

**ORDER ADOPTING REPORT AND
RECOMMENDATION
REMANDING TO THE ALJ**

**[ECF Nos. 12, 14, 16.]**

　　　　On June 5, 2018, Plaintiff Veronica Ragudo ("Plaintiff") filed an application seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications for disability and disability insurance benefits. ECF No. 1. After careful consideration of Magistrate Judge Mitchell D. Dembin's report and recommendation ("R&R"), the pleadings, the supporting documents, and the applicable law, the Court **ADOPTS** Judge Dembin's R&R and **REMANDS** this matter for further analysis consistent with this order.

I.　　**Background**

　　　　On May 7, 2014, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act alleging a disability date of May 15, 2013. Administrative Record ("AR") at 10. Plaintiff alleged disability based on degenerative

disc disease as well as hypertension, diabetes mellitus, and obesity. AR at 12–13. Plaintiff's claims were initially denied on June 18, 2014 and denied again upon reconsideration on September 24, 2014. AR at 79, 88.

On June 24, 2015, Plaintiff filed a written request for an administrative hearing. AR at 105. On April 5, 2017, Plaintiff appeared with counsel and testified before Administrative Law Judge Keith Dietterle ("ALJ"). AR at 45–72.

On August 11, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits. AR at 20. On August 18, 2017, Plaintiff sought review with the Appeals Council. AR at 149. On April 9, 2018, the ALJ's decision became the final decision of the Commissioner when the Appeals denied Plaintiff's request for review. AR at 1–3.

On June 5, 2018, Plaintiff commenced the instant action seeking judicial review of the Commissioner's decision. ECF No. 1. On September 7, 2018, Defendant answered and lodged the administrative record with the Court. ECF Nos. 9, 10. On October 29, 2018, Plaintiff moved for summary judgment. ECF No. 12. On November 26, 2018, the Commissioner cross-moved for summary judgment and responded to Plaintiff's motion. ECF. Nos. 14, 15. No further responses or replies were filed on either motion. On August 19, 2019, the Magistrate Judge issued the R&R without objection. ECF No. 16.

## II. The ALJ Decision

The ALJ applied the five-step sequential framework to determine that Plaintiff did not have a disability within the meaning of the Social Security Act from May 15, 2013 through the date of the ALJ's decision. AR at 10–11. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 15, 2013. AR at 12. At step two, the ALJ found that Plaintiff had the following severe impairment: degenerative disc disease. AR at 12. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. *See* AR at 50 (citing 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526)).

The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform light work. AR at 14. Plaintiff could "sit six hours in an eight hour day; occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds; occasionally climb stairs, never climb ladders, scaffolds, ropes: occasionally balance, stoop, kneel, crouch, and crawl." AR at 14. Plaintiff also "must avoid concentrated exposure to unprotected height and dangerous or fast moving machinery." AR at 14.

The ALJ then proceeded to step four of the sequential evaluation process, finding Plaintiff was unable to perform her past relevant work. AR at 18. At step five, the ALJ determined that Plaintiff could perform various jobs which exist in significant numbers in the national economy. AR at 20. These include, for example, a vacuum dryer tender (DOT Code 553.685-016), pressure tank operator (DOT code 523.385-010), and fermenter operator (DOT code 559.685-070). AR at 20.

## III.  Legal Standards

## A.  Standard of Review of Magistrate Judge's R&R

The district court's duties in connection with an R&R of a magistrate judge are set forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b). The district judge must "make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). The district court need not review *de novo* those portions of an R&R to which neither party objects. *See Wang v. Masaitis*, 416 F.3d 992, 1000 n. 13 (9th Cir. 2005); *U.S. v. Reyna-Tapia*, 328 F.3d 114, 1121–22 (9th Cir. 2003) (*en banc*). When no objections are filed, the Court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).

Because no objections have been filed, the Court assumes the correctness of Magistrate Judge Dembin's factual findings. *See Campbell*, 501 F.2d at 206.

## B.  Standard of Review of the Commissioner's Decision

A court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). The court will uphold an ALJ's findings when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995)). "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)).

The court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely for the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir.1971)).

## IV. Analysis

For purposes of the Social Security Act, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant carries the initial burden of proving disability. *Id.* at § 423(d)(5); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).

Here, the ALJ found that Plaintiff was not disabled. AR at 20. Plaintiff challenges that finding on two bases. First, Plaintiff argues that the ALJ erred in giving great weight

to the opinion of the consultative examiner ("CE"), Dr. Sabourin. *See* ECF No. 12 at 4–11. Second, Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject her subjective pain testimony. *See* ECF No. 12 at 11–14. Based on a review of the record, this Court finds that the ALJ's reliance on Dr. Sabourin's findings was not in error but that, nonetheless, the case must be remanded because the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's pain testimony. *See Garrison v. Colvin*, 759 F.3d 995, 1015–16 (9th Cir. 2014).

## A.    Reliance on Dr. Sabourin's Findings

On July 12, 2016, Dr. Sabourin performed an orthopedic consultation on Plaintiff to determine the extent of her injuries. AR at 531–47. Dr. Sabourin used "formal physical examination procedures" and "observ[ed] the claimant's movements and actions." AR at 534. With respect to Plaintiff's gait and mobility, Dr. Sabourin noted that she stood with normal posture, could rise without difficulty, had no limp, could do toe to heel walking, and lacked any tilt or list. AR at 535. While examining her cervical and lumbar spine, Dr. Sabourin noted no palpable spasms, swelling, warmth or deformities, and only minor reductions in Plaintiff's range of motion (except as to her forward flexion). AR at 535. Plaintiff tested negative during her supine and sitting straight-leg raise ("SLR")[1] tests and displayed normal motor strength. AR at 536.

Based on his observations, and on Plaintiff's oral medical history, Dr. Sabourin concluded that Plaintiff suffered from a "failed back syndrome after a series of four surgeries on the lumbar spine over two years." AR at 537. He diagnosed her with degenerative disk disease, a history of post-surgery fluid leak, and a chronic cervical spine strain and sprain. AR at 537. In light of her condition, Dr. Sabourin opined that

---

[1] SLR is a common test used to diagnose back pain. Though there are multiple variations, typically the patient lies on their back as the doctor "flexes the patient's hip while maintaining the knee in extension." Alon Rabin, DPT, et al, *The Sensitivity of the Seated Straight-Leg Raise Test Compared with the Supine Straight-Leg Raise Test in Patients Presenting with Magnetic Resonance Imaging Evidence of Lumbar Nerve Root Compression*, 88 ARCHIVES OF PHYSICAL MED. AND REHABILITATION 840, 840 (2007).

Plaintiff could perform work in line with the "light work" category of the Social Security Administration's ("SSA") physical exertion requirements. *See* AR at 538; 20 CFR § 404.1567(b).

The ALJ placed "great weight" on Dr. Sabourin's assessment. AR at 17. The ALJ noted that Dr. Sabourin understood the SSA's disability programs and evidentiary requirements. AR at 17. The ALJ further noted that Dr. Sabourin's opinion was "consisten[t] with the record as a whole" and that Dr. Sabourin had reviewed the case record and medical documents. AR at 17. Because Dr. Sabourin's review of those documents was limited to the "medical source vendor question page," AR at 537, Plaintiff now claims that Dr. Sabourin's assessment was "way off" and presented merely "a limited one-time examination" inconsistent with the record. *See* ECF No. 12 at 5. Plaintiff's argument is unavailing.

As an initial matter, the Ninth Circuit's decision in *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001), supports a finding that the ALJ did not err by placing "great weight" on Dr. Sabourin's opinion. AR at 17. In *Tonapetyan*, the Ninth Circuit affirmed the ALJ's decision to disregard the testimony of a treating physician and an examining physician in favor of the testimony of a second examining physician and a non-examining medical expert. *Tonapetyan*, 242 F.3d at 1148. The Ninth Circuit found that the ALJ had correctly relied on the notes from the second examining physician because the doctor conducted "his own independent examination of Tonapetyan." *Id.* at 1149. Here, Dr. Sabourin's independent medical assessment is analogous to that of the second examining physician in *Tonapetyan* and thus qualifies as substantial evidence. *Id.* at 1149; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("to the extent that [a physician's] opinion rests on objective clinical tests, it must be viewed as substantial evidence").

In addition, the ALJ did not err because, even if Dr. Sabourin did not review Plaintiff's medical records, Dr. Sabourin's assessment is "consisten[t] with the record as a whole." AR at 14–18; *see Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)

(noting that a physician's opinion may constitute substantial evidence where it is consistent with the record as a whole).

The ALJ laboriously synthesized Plaintiff's lengthy medical history. Plaintiff has undergone four surgeries: a laminectomy in 2003, a fusion in May 2013, a fusion in November 2014, and a repair of a dural tear in December 2014. AR at 374–75, 379, 412–13, 415–17. Plaintiff's 2013 surgery resulted from injuries sustained during a car crash where she was rear-ended at an estimated speed of 30 miles per hour. AR at 721. During her recovery, she has suffered various setbacks, including a fall that aggravated her injuries in 2013 and wound complications that led her to the emergency room in 2014. AR at 365, 437. Plaintiff has consistently reported experiencing pain, which a doctor once described as "chronic and intractable." AR at 596.

However, the record tends to support the ALJ's conclusion that Plaintiff's "[p]ost-surgical follow up notes show[] minimal objective findings [of a disability] in contrast to [her] subjective complaints." AR at 15–17. For example, the notes from Plaintiff's post-surgery treating physician, Dr. Nathan Miller, show that Plaintiff only tested positive for pain during SLR tests in her initial visits. *Compare* AR at 596, 599, 602, 60) *with* AR at 570, 572, 575, 578, 581, 584, 587, 590, 592. Subsequent notes consistently described her post-laminectomy syndrome as "stable," her gait as "normal," and her "toe standing" and "squatting" as intact. AR at 570, 575, 577–78. She displayed, moreover, only limited tenderness around her spine and weakness in her left heel during those consultations. AR at 570, 575, 577–78. Plaintiff also reported some pain relief as a result of ongoing physical therapy and aqua therapy. AR at 569, 589. The notes from Plaintiff's treating physical therapist, Dr. Imran Ahmed, also show that she had a "good" potential for rehabilitation. AR at 655.

In addition to the opinion testimony, various medical scans taken in 2015 support the ALJ's conclusion. An x-ray of Plaintiff's lumbosacral spine from April 2015, for example, showed no evidence of hardware complications resulting from the surgeries. AR at 1016. An x-ray of the lumbar spine taken in September 2015 produced comparable

results: "[s]table anterior posterior fusion L3-SI." AR at 1000. Similarly, an x-ray of Plaintiff's cervical spine, also from April 2015, found no abnormal signal within the spinal cord and no cord deformities despite some mild disc bulging. AR at 1014–15. Thus, though Plaintiff's post-surgical record continues to show some medical problems, the ALJ's conclusion that Plaintiff's condition is stable and that she is "able to do a number of activities of Daily Living" is supported by substantial evidence. AR at 18.

Plaintiff contends that the ALJ's summary does not accurately capture the severity of her limitations. Plaintiff highlights some objective evidence of ongoing medical problems, such as a positive SLR test on November 17, 2013, moderate hip joint degenerative changes observed during an MRI on April 4, 2015, and another positive SLR test on May 20, 2016. AR at 363–64, 595, 1027. However, the weight of the objective medical evidence, as summarized by the ALJ, contradicts Plaintiff's argument.[2]

As Defendant notes, no doctor has opined a greater functional limitation than those found by the ALJ. Rather, the other doctors' opinions are consistent with the ALJ's findings. *See* 20 C.F.R. § 404.1527(c)(4) (SSA rule assigning greater weight to the opinions of physicians which are consistent with the record as a whole). Dr. Mauro, for example, reviewed Plaintiff's application and concluded on June 18, 2014 that Plaintiff could perform light work. AR at 73–81. Similarly, upon reconsideration, Dr. Phillips concurred with Dr. Mauro on September 24, 2014 that Plaintiff was capable of performing light work. AR at 81–90. Plaintiff, moreover, does not point to a medical opinion in the record to contradict these assessments of her functional limitations. *See Champagne v. Colvin*, 582 F. App'x 696, 697 (9th Cir. 2014) (rejecting assertion that

---

[2] In rendering this conclusion, the Court does not consider Plaintiff's pain testimony because the ALJ has found Plaintiff to not be credible. *See* AR at 14; *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (noting that district courts must defer to the ALJ's credibility determinations). However, if the ALJ concludes that Plaintiff is credible following a more fulsome review of her testimony and allegations on remand, *see infra* Part IV.B, the weight of the evidence may shift. *See Tonapetyan*, 242 F.3d at 1148 ("If proceedings on remand lead to a change in the credibility determination, the medical testimony concerning her physical impairments and exertional capacity will have to be reassessed").

ALJ improperly disregarded physicians' opinions "because none of the treating providers gave an opinion regarding [claimant's] functional limitations").

Lastly, Plaintiff cites to various cases for the proposition that a consultative examiner's opinion ("CE") cannot constitute substantial evidence where the CE does not review the patient's medical records. *See* ECF No. 12 at 4; *see also Bay v. Comm'r of Soc. Sec.*, No. 217CV01034TLNKJN, 2018 WL 4039975 at *4 (E.D. Cal. Aug. 22, 2018); *Turk v. Berryhill*, No. 2:17-CV-00767 AC, 2018 WL 3363738, at *5 (E.D. Cal. July 10, 2018); *Jackson v. Astrue*, No. CIV S-10-2401 EFB, 2012 WL 639304, at *4 (E.D. Cal. Feb. 24, 2012); *Sloan v. Astrue*, No. CV 8–07479–MAN, 2009 WL 5184426, at *4 n.11 (C.D. Cal. Dec. 21, 2009).

These cases are inapposite. The respective district courts found that the CE's assessment, conducted without reading the medical history of the patient, lacked substantial evidence where it was contradicted by other evidence in the record, including the medical opinions of the treating physicians. *Cf. Bay*, 2018 WL 403997, at *4 (noting CE's opinion conflicted with Plaintiff's long-term treating psychiatrist); *Turk*, 2018 WL 3363738, at *5 (noting CE's opinion conflicted with the treating physician's notes); *Jackson*, 2012 WL 639304, at *4 (noting CE's opinion conflicts with treating physician's opinion). Here, as noted, the medical opinions in the record consistently suggest Plaintiff is capable of conducting light work. *See* AR at 73–81, 81–90, 531–47.

Consequently, in light of the foregoing reasons, this Court finds that the ALJ did not err by placing great weight on Dr. Sabourin's opinion even though he did not review Plaintiff's medical history before rendering a decision as to her capacity for work.

**B. Reason for Rejecting Plaintiff's Subjective Pain Testimony**

In deciding whether to accept a claimant's subjective pain or symptom testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must assess "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th

Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.1991)). Second, if the first test is met and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281.

The ALJ determines "credibility, resolve[s] conflicts in the testimony, and resolve[s] ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). The decision "must contain *specific reasons* for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to . . . any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* (emphasis in original) (quotations omitted); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) ("[An ALJ] must state which pain testimony is not credible and what evidence suggests the complaints are not credible."). The ALJ must provide "specific, cogent reasons for the disbelief" when it rejects the claimant's complaints. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990) (citations omitted); *see also Lester v Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("General [credibility] findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain . . . it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ "[m]ay consider a range of factors in assessing credibility, including (1)'ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately

explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284).

Here, the ALJ found that the record established "objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036. Specifically, the ALJ found that "the claimant ha[d] been diagnosed by acceptable medical sources with [degenerative disk disease of the lumbar spine]." AR at 12. This meets the threshold required for step one.

With respect to step two, the ALJ found Plaintiff's testimony not credible for three reasons. First, the ALJ concluded that Plaintiff's statements were not consistent with the medical evidence in the record. AR at 14. Second, the ALJ found that the record contradicted Plaintiff's testimony that she regularly used a cane to walk. AR at 18. Third, the ALJ held that Plaintiff had "not shown a consistent restriction on her activities of daily living which correspond[ed] to the alleged severity of her impairments." AR at 18.

After summarizing Plaintiff's medical history, the Magistrate Judge concluded that the ALJ's first reason – the disparity between the medical evidence and Plaintiff's pain testimony – was one "legally sufficient reason" upon which to base his credibility determination. ECF No. 16 at 12. The Magistrate Judge then rejected the ALJ's second and third reasons, finding that (A) the ALJ omitted "significant testimony" as to Plaintiff's activities of daily living and that (B) Plaintiff's use of a cane should not affect her credibility. ECF No. 16 at 12–15. Then, acknowledging that the ALJ's first reason alone cannot support a finding that Plaintiff's pain testimony was incredible, the Magistrate Judge recommended remanding the case to the ALJ for further consideration of Plaintiff's credibility and her pain testimony. *See* ECF No. 16 at 14–15.

The Court agrees with Magistrate Judge Dembin and adopts these findings for the following reasons. First, the SSA defines objective medical evidence as evidence of "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1529(c)(2). In the context of Plaintiff's case, this would include, among other

evidence, the x-rays and physical examinations discussed above. As was noted, the medical opinions of Dr. Mauro, Dr. Phillips, and Dr. Sabourin consistently diverge from Plaintiff's testimony about the severity of her symptoms. AR at 73–90, 531–47. Similarly, absent Plaintiff's comments, the medical notes pertaining to Dr. Miller and Dr. Ahmed's consultative sessions suggest Plaintiff's condition was stable or improving. AR at 562–606, 655. The x-ray results also buttress the ALJ's conclusion. AR at 1000, 1014–16. Thus, while there is some support for Plaintiff's testimony in the record, the ALJ's conclusion regarding the disparity between the objective medical evidence and Plaintiff's pain testimony is not unreasonable.

As the Magistrate Judge notes, however, an ALJ may not reject a claimant's pain testimony merely because the testimony appears disproportionate to the medical evidence. *See Burch*, 400 F.3d at 680 ("an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain"); *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); Social Security Ruling (SSR) 16–3p (S.S.A. Oct. 25, 2017) (stating that SSA adjudicators should "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual"). Hence, to reject Plaintiff's testimony, the ALJ would have had to establish another clear and convincing reason.

Here, the ALJ failed to do so. First, Plaintiff's use of an unprescribed cane is not a convincing reason to discredit her testimony. The ALJ concluded that the medical records repeatedly showed Plaintiff was not prescribed an assistive device. AR at 18, 402, 409. Plaintiff, however, readily admitted this at the hearing, stating that "[the doctors] just – they never prescribed it." AR at 57. Plaintiff explained that she began using a cane before her second surgery and now only walked without her cane for "short periods." AR at 55–57). Plaintiff further explained that the cane "helps" her when navigating the steps in her

home because she has difficulty lifting her legs over them. AR at 57–58. Plaintiff shared that she had already fallen once following one of her surgeries, a fact that was corroborated by her treating physician's notes on November 19, 2013. AR at 57, 365.

Likewise, the ALJ's reliance on some testimony pertaining to Plaintiff's activities of daily living is not persuasive. In reaching the conclusion that Plaintiff did not show a "consistent restriction" between her testimony and activities of daily living, the ALJ noted that Plaintiff could "go out independently and c[ould] drive a car." AR at 18, 534. The ALJ also cited some of Plaintiff's testimony from the hearing, noting that she could do household chores, go grocery shopping, and lift light bags. AR at 18. Of the many difficulties Plaintiff discussed at the hearing, the ALJ only cited to the fact that she experienced difficulty bending, which affected her ability to bathe and dress. AR at 18.

With this description, the ALJ "mischaracterized [Plaintiff's] testimony." *See Garrison*, 759 F.3d at 1016. For example, while the ALJ noted that Plaintiff could wash dishes, the ALJ did not explain that she could only do so sparingly because standing over the sink hurt her back. AR at 18, 58. Likewise, the ALJ considered Plaintiff's capacity to cook and drive without explaining that Plaintiff's husband did "a lot of the cooking" and almost all of the driving. AR at 18, 58, 66. The ALJ did not address Plaintiff's testimony that she only drove when her husband was unable to drive her to her medical appointments and that, on those days, she was forced to not take her medicine so that she can drive competently. AR at 18, 66–67. In addition, while the ALJ notes Plaintiff had problems bathing and dressing, the ALJ's opinion neither conveyed the level of difficulty Plaintiff experienced nor noted that her husband had to help her with those tasks. AR at 18, 60–61. Plaintiff complained specifically that she experienced pain bending forward, a fact seemingly confirmed by Dr. Sabourin's examination, but absent from the ALJ's analysis. *See* AR at 18, 60–61, 535 (noting reduced forward flexion).

Furthermore, the ALJ did not mention other relevant testimony, including that Plaintiff's daughter-in-law regularly helped around the house, that Plaintiff experienced difficulty sleeping, and that Plaintiff had trouble climbing stairs. AR at 18, 58–59, 68.

The ALJ also did not consider that, though Plaintiff stated she could do some of these chores, she also said they only comprised a portion of her day. AR at 18, 60. Plaintiff testified that she had to rest daily, either in a reclining chair with her feet elevated, or by laying down in bed – specifically, on her *right* side – with a pillow between her legs. AR at 18, 60. The ALJ's limited consideration of Plaintiff's testimony renders this portion of his opinion unconvincing. *See Reddick*, 157 F.3d at 722 (recognizing claimant's activities were not inconsistent with her illness as they were "sporadic and punctuated with rest").

Moreover, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *See Garrison*, 759 F.3d at 1016 (collecting cases).

Here, Plaintiff's strained efforts to cook or clean, as described in her testimony, are not signs that she is without a disability. Rather, such efforts show that she endeavors to live a normal life *in spite* of her injuries. Afterall, a person "does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan*, 260 F.3d at 1050 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989)).

Consequently, the Court concludes that the ALJ failed to provide specific, clear, and convincing reasons for discrediting Plaintiff's testimony regarding the severity of symptoms. The ALJ based his adverse credibility determination on three conclusions: (1) that Plaintiff's allegations of pain and impairment were inconsistent with the medical evidence; (2) that Plaintiff's testimony regarding her cane was inconsistent with the medical record; and (3) that Plaintiff's specified daily activities were not consistent with her alleged symptoms and limitations. Because this court finds that neither Plaintiff's cane-related testimony nor daily-activities testimony were inconsistent, and because a

finding that a claimant lacks credibility cannot be based wholly on a lack of medical evidence corroborating the pain testimony, *Light*, 119 F.3d at 792, this Court **DENIES** Defendant's motion for summary judgment and **GRANTS** Plaintiff's motion for summary judgment in so far as Plaintiff sought a remand on this point.

## V.     Conclusion

Based on the above, the Court **ADOPTS** the R&R and **REMANDS** this matter to the ALJ for further consideration consistent with this order. Plaintiff's motion for summary judgment is **GRANTED** in so far as Plaintiff sought the case be remanded. Defendant's motion for cross-motion for summary judgment is **DENIED**. The Clerk of Court shall close the case.

**IT IS SO ORDERED**.

Dated:  September 27, 2019

Hon. Gonzalo P. Curiel
United States District Judge

18-cv-1172-GPC-MDD